UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF TENNESSEE
                           at CHATTANOOGA

MARJORIE WALLACE and GENE )
WALLACE, )
 )
   *Plaintiffs*, )
 )
v. ) Case No. 1:06-cv-106
 )
GENERAL STAR INDEMNITY ) Judge Mattice
COMPANY, )
 )
   *Defendant.* )

## **MEMORANDUM AND ORDER**

Before the Court are Defendant General Star Indemnity Company's Motion for Summary Judgment [Court Doc. No 18] and Plaintiffs' Motion for Summary Judgment [Court Doc. No. 20]. Both seek judgment on the issue of whether Dr. Randolph McKenzie's professional liability insurance policy, issued by Defendant, indemnifies him against a judgment obtained against him by Plaintiffs. As the parties' cross motions address the identical issue, the court will consider both simultaneously.

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l*

*Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTS

The parties are in agreement that no material issue of fact is in dispute. The parties have stipulated to the following facts.

On August 25, 2003, Defendant issued a professional liability insurance policy (Court Doc. No. 17-2) ("Policy") to Dr. McKenzie as the named insured. (Court Doc. No. 17, Joint Statement of Stipulated Material Facts ¶ 1.) The Policy period started on

September 1, 2003, and expired on September 1, 2004, at 12:01 A.M. standard time at the address of the named insured. (*Id.* ¶ 2.)

Plaintiffs sued Dr. McKenzie for malpractice in a Tennessee state court. (*Id.* ¶ 6.) Plaintiffs filed their malpractice complaint on August 30, 2004, and Dr. McKenzie was served on September 1, 2004. (*Id.*) In a facsimile dated September 2, 2004, and bearing a legend at the top indicating that it was sent on September 3, 2004, Dr. McKenzie forwarded a copy of the summons and complaint he received from Plaintiff Marjorie Wallace on the afternoon of September 1, 2004, to Defendant's agent. (*Id.* ¶ 7.) This is the earliest notice—either actual or constructive—that Dr. McKenzie gave Defendant regarding the malpractice suit by Plaintiffs. (*See id.* ¶¶ 7-10.)

On September 7, 2004, Defendant informed Dr. McKenzie that it was declining coverage for Plaintiffs' claim, as the claim was reported after the policy period had expired. (*Id.* ¶ 11.)

Plaintiffs' malpractice suit culminated in a default judgment against Dr. McKenzie on March 17, 2006, in the amount of $1,000,000. (*Id.* ¶ 12.)

The following provisions of the Policy are relevant to the parties' arguments:

[T]his insurance applies to a claim only if:

1. The **professional services** giving rise to such a **claim** are rendered:

. . .

    d. On or after the **retroactive date** specified for the **named insured** and before the end of the **policy period**; and

2. Such **claim** is reported to us in writing within ten (10) days of receipt by the **named insured** of a written notice of a **claim**; and

3. The **named insured's** written report of a **claim** is received by us prior to the expiration of the **policy period** . . . .

(Policy, Section II.)

**11. Named Insured's Duties In The Event Of A Claim:**

    **a. Notice of Claim** – If a claim covered by this policy is made against the **insured**, the insured shall deliver to the Company within ten (10) days of the date of receipt of the **claim**, every demand, notice, summons, notice of intent to sue, summons, complaint, and/or other documents the **insured** or the **insured's** representative receives relating to the **claim**.

(*Id.*, Section XI.)

### III. ANALYSIS

The issue before the Court is whether the Policy covers Plaintiffs' claim—and subsequent judgment—against Dr. McKenzie. In cases such as this, which arise under the Court's diversity jurisdiction under 28 U.S.C. § 1332, the Court applies the law of the state in which it sits in accordance with the controlling decisions of the state supreme court. *Pennington v. Am. Tel. & Tel. Co.*, 202 Fed. App'x 880, 883 (6th Cir. 2006). "[I]f that court has not yet addressed the relevant issue, this court must predict how the court would rule by looking at all the available data." *Id.* (citing *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys.*, Inc., 249 F.3d 450, 454 (6th Cir. 2001)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless [the Court is] presented with persuasive data that the [state supreme court] would decide otherwise." *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995).

As to contracts, the Court must apply the choice of law rules of the state in which the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941);

*Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). In Tennessee, in the absence of a choice of law provision in a contract, the law of the place where a contract is made governs the construction and validity of the contract. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973). There is nothing in the record before the Court to indicate where the Policy was made. As the parties are in apparent agreement, however, that Tennessee law applies to the Policy, the Court will assume that the Policy was formed in Tennessee, and apply its laws accordingly. *See Turner Const. Co. v. Robert Carter Corp.*, 162 F.3d 1162, 1998 WL 553009, at *3 (6th Cir. 1998) (Applying Michigan law because "the contract at issue in this case has no choice of law provision and the parties do not argue that any law other than that of Michigan should apply.").

Plaintiffs argue, as putative third party beneficiaries, that the Policy covers their claim against Dr. McKenzie for two reasons. First, Plaintiffs contend that the Policy's claim-reporting deadlines are contradictory and that the Court should resolve the resulting ambiguity in favor of coverage. Second, Plaintiffs argue that even if Dr. McKenzie failed to report their claim in a timely manner, such a failure should be excused in accordance with the rule announced by the Tennessee Supreme Court in the case of *Alcazar v. Hayes*, 982 S.W.2d 845 (Tenn. 1998). The Court will address each argument in turn.

### A. Is the Policy Ambiguous?

Plaintiffs first argue that the Policy is ambiguous in light of conflicting provisions specifying when Dr. McKenzie must report a claim to Defendant. Defendant argues that the Policy is not ambiguous. A contract is not rendered ambiguous simply because the

parties disagree as to the interpretation of its provisions. *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 n.5 (Tenn. Ct. App. 2000). A contract provision is ambiguous only if it is subject to more than one reasonable interpretation. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* If, however, an insurance contract is ambiguous and susceptible to two reasonable meanings, "the one favorable to the insured must be adopted." *Boyd v. Peoples Protective Life Ins. Co.*, 345 S.W.2d 869, 872 (Tenn. 1961).

Plaintiffs contend that Section II, Paragraph 3 of the Policy, which requires Dr. McKenzie to submit in writing a report of a patient's malpractice claim before the coverage period expires, is at odds with two other provisions of the Policy. The Court will refer to this portion of the Policy as the claims-made provision. The first allegedly conflicting provision is found directly above the claims-made provision, and requires Dr. McKenzie to report a claim of malpractice to Defendant within ten days after he received written notice of the claim. (Policy, Sect. II, ¶ 2.) This provision, however, is connected to the claims-made provision by the coordinate conjunction "and," which connotes that both provisions must be satisfied before Defendant is obliged to offer coverage. It is not logically inconsistent to require Dr. McKenzie to report a malpractice claim both within the coverage period (*see* Policy, Sect. II, ¶ 3) and within ten days of receiving written notice of such a claim (*see* Policy, Sect. II, ¶ 2). Further, the Policy's use of the word "and" between these two provisions makes clear that this is the only reasonable interpretation of these provisions. Accordingly, the Court finds that these provisions are not ambiguous. *See Planters Gin Co.*, 78 S.W.3d at 890.

The second provision that allegedly conflicts with the claims-made clause is Section XI, Paragraph 11(a). Plaintiffs point out that this clause states that "[t]he insured is given ten . . . days in which to notify the insurer of a claim." (Court Doc. No. 21, Pls.' Brief in Supp. of Mot Summ. J. 9.) Therefore, Plaintiffs argue, the Policy has two inconsistent reporting deadlines: one within the coverage period, and one within ten days. (*Id.*) Plaintiffs' argument glosses over the clear meaning of Policy Section XI, Paragraph 11(a). A cursory reading of this clause reveals that it requires Dr. McKenzie to submit to Defendant within ten days any document he receives in conjunction with a malpractice claim, and does not deal with a report of the claim itself. There is nothing inconsistent in requiring Dr. McKenzie to submit a written report of a malpractice claim within the coverage period (*see* Policy, Sect. II, ¶ 3) and requiring him to forward any documents in relation to that claim within ten days of when he receives them (*see* Policy, Sect. XI, ¶ 11(a).). As Plaintiffs have advanced no other reasonable interpretation of these provisions, the Court finds that no ambiguity exists in relation to them. *See Planters Gin Co.*, 78 S.W.3d at 890.

As Plaintiffs have failed to point out an ambiguity within the Policy, the Court is not required to interpret the Policy in favor of coverage on public policy grounds. *See Boyd*, 345 S.W.2d at 872. Instead, the Court must give effect to the literal meaning of the Policy's clear language as it pertains to claim reporting deadlines, s*ee Planters Gin Co.*, 78 S.W.3d at 890, which is as follows. To be entitled to coverage under the Policy, Dr. McKenzie must, *inter alia*, (1) report in writing a claim of malpractice against him to Defendant within the coverage period (*see* Policy, Sect. II, ¶ 3); and (2) report the claim within ten days of receiving written notice of such a claim (*see* Policy, Sect. II, ¶ 2); and

(3) submit to defendant any documents he has received in conjunction with such a claim within ten days of receiving these documents (*see* Policy, Sect. XI, ¶ 11(a).) Accordingly, the Court will **DENY** Plaintiffs' Motion for Summary Judgment as to ambiguity.

    **B.**    **Does *Alcazar v. Hayes* excuse an untimely claim?**

In *Alcazar v. Hayes*, the Tennessee Supreme Court aligned itself with the majority of other jurisdictions and adopted the notice-prejudice rule, which states that forfeiture of an insurance policy does not automatically result from an insured's breach of a notice provision. *See Alcazar*, 982 S.W.2d at 856. Instead, the insured may excuse his untimely notice if he shows that the insurer was not prejudiced by the delay. *Id.* The court delineated three policy reasons for adopting the notice-prejudice rule: "(1) the adhesive nature of insurance contracts; (2) the public policy objective of compensating tort victims; and (3) the inequity of the insurer receiving a windfall due to a technicality." *Id.* at 850.

Before the Court determines whether the rule set forth in *Alcazar* applies, some background on professional liability insurance contracts is in order. Generally, liability insurance policies can be categorized by how the duration of coverage is determined.

> Most policies of liability insurance may be characterized as either occurrence policies or claims-made policies. Occurrence policies protect policyholders against incidents that occur while the policy is in force, even if the claim that arises from that incident is not filed until after the policy expires or is terminated. Claims-made policies protect policyholders against claims that are filed while the policy is in force, even if the incident giving rise to the claim occurred before the policy was executed.

*Pope v. Leuty & Heath, PLLC*, 87 S.W.3d 89, 93 (Tenn. Ct. App. 2002). The Policy in this case, however, is not like most liability insurance policies. As explained above, the

claims-made provision requires Dr. McKenzie to report a claim of malpractice before the coverage period expires.  (*See* Policy, Sect. II, ¶ 3.)  Another provision—which the Court will describe as the occurrence provision—limits coverage to professional services rendered before the expiration of the policy period.  (*See* Policy, Sect. II, ¶ 1(d).)  Thus, the Policy in the case at bar has aspects of both a claims-made policy and an occurrence policy.  Dr. McKenzie must report a malpractice claim before the coverage period expires, *and* the services which gave rise to that claim must have occurred before the coverage period expires.  Thus, the Policy's duration of coverage is more restrictive than either a pure claims-made policy or a pure occurrence policy.

The distinction between claims-made policies and occurrence policies is important to this case because the Tennessee Supreme Court has explicitly reserved ruling on whether *Alcazar* applies to claims-made policies, *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 818 (Tenn. 2000), and the Tennessee Court of Appeals has held that *Alcazar* does not, in fact, apply to these policies, *Pope*, 87 S.W.3d 94-95. Further, the majority of courts in other jurisdictions refuse to apply the notice-prejudice rule to claims-made insurance policies.  *See Salt Lake Toyota Dealers Ass'n v. St. Paul Mercury Ins. Co.*, No. 2:05-CV-497 TS, 2006 WL 1547996, at *4 n.39 (D. Utah June 6, 2006) (compiling cases).  Some of these cases reason that "require[ing] a showing of prejudice for late notice would defeat the purpose of 'claims-made' policies, and in effect, change such a policy into an 'occurrence' policy." *Hirsch v. Tex. Lawyers' Ins. Exch.*, 808 S.W.2d 561, 565 (Tex. Ct. App. 1991).

Based on the decision of the Tennessee Court of Appeals in *Pope*, this Court concludes that the Tennessee Supreme Court would not apply the notice-prejudice rule

set forth in *Alcazar* to pure claims-made policies. *See Kingsley Assoc.*, 65 F.3d at 507 (In gleaning state law, state intermediate appellate court "decisions should not be disregarded unless [the Court is] presented with persuasive data that the [state supreme court] would decide otherwise."). Thus, the Court is left to determine only whether the Policy is sufficiently similar to a claims-made policy to apply the rule in *Pope*.

In determining whether *Pope* applies to the Policy in this situation, the relevant portion of the Policy is not the occurrence provision, which limits coverage to events which *occur* during the policy period (*see* Policy, Sect. II, ¶ 1(d).), but the claims-made provision, which *also* limits coverage to claims *reported* within the policy period (*see* Policy, Sect. II, ¶ 3.). In a pure occurrence policy, a reporting deadline serves only to allow the insurer adequate time to investigate a claim. Thus, the only reason for denying a claim that is reported outside the reporting deadline in an occurrence policy, but still prompt enough to give insurer time for an adequate investigation, is to deny coverage on a so-called "technicality." *See Alcazar*, 982 S.W.2d at 850-51.

In a claims-made policy, however, coverage itself is measured by when a claim is reported. The reporting deadline defines the duration of coverage, which is substantive, and not a technicality. As such, at least a portion of the reasoning behind *Alcazar* does not apply. *See id.* (relying in part on the concept that "public policy disfavors the ability of an insurer to escape its contractual duties due to a technicality"); *Hirsch*, 808 S.W.2d at 565 ("require[ing] a showing of prejudice for late notice would defeat the purpose of 'claims-made' policies").

As explained above, the scope of coverage of the Policy at issue is doubly limited—by both an occurrence and a claims-made limitation—and may be more meager than either a pure claims made or a pure occurrence policy. This fact alone, however, does not permit the Court to extend *Alcazar* past its policy justifications. Nor does it allow the Court to disregard the scope of the coverage provided by the Policy for other reasons. "In the absence of fraud, overreaching, or unconscionability, the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain." *Quintana v. Tenn. Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct .App. 1989). Plaintiffs do not argue any of these grounds.

In deciding to purchase the Policy at issue, Dr. McKenzie presumably benefited from lower premiums, or failed to shop around for the most coverage for his money. In any event, the Court may not simply rewrite the Policy. *Spears v. Commercial Ins. Co. of Newark, N. J.*, 866 S.W.2d 544, 548 (Tenn. Ct. App. 1993) ("This court is not at liberty to rewrite policies of insurance to provide coverage where no coverage was intended."), *overruled on other grounds by Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809 (Tenn. 1996).

The court holds that the decision of the Tennessee Court of Appeals in *Pope* controls this situation, and the notice-prejudice rule set forth in *Alcazar v. Hayes* is inapplicable to the Policy. Accordingly, the Court will **DENY** Plaintiffs' Motion for Summary Judgment as to its argument under *Alcazar*.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment [Court Doc. No. 20] is **DENIED**.

As stated above, to be entitled to coverage under the Policy, Dr. McKenzie must, *inter alia*, (1) report in writing a claim of malpractice against him to Defendant within the coverage period (*see* Policy, Sect. II, ¶ 3); (2) report the claim within ten days of receiving written notice of such a claim (*see* Policy, Sect. II, ¶ 2); and (3) submit to defendant any documents he has received in conjunction with such a claim within ten days of receiving these documents (*see* Policy, Sect. XI, ¶ 11(a).) The parties do not dispute whether Dr. McKenzie satisfied these requirements—he did not. Thus, Defendant is under no duty under the Policy to indemnify or defend Dr. McKenzie, and therefore has no duties under the Policy to Plaintiffs as Dr. McKenzie's judgment creditors. Accordingly, Defendant General Star Indemnity Company's Motion for Summary Judgment [Court Doc. No 18] is **GRANTED**, and the above captioned case will be **DISMISSED WITH PREJUDICE**.

SO ORDERED this 1st day of June, 2007.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE